

**FILED**
CLERK, U.S. DISTRICT COURT

3/12/25

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ eo _____ DEPUTY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT COURT OF CALIFORNIA

| | |
|---|---|
| SUSAN PECK, et al., | 2:19-cv-04654-DSF-AFM |
| Plaintiffs, | |
| v. | |
| COUNTY OF ORANGE, et al., | **JURY INSTRUCTIONS** |
| Defendants. | |

**INSTRUCTION NO. 1**

Members of the Jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

**INSTRUCTION NO. 2**

When a party has the burden of proving any claim or defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

**INSTRUCTION NO. 3**

You should decide the case as to each Defendant and each claim separately. Unless otherwise stated, the instructions apply to all parties and all claims.

## INSTRUCTION NO. 4

The evidence you are to consider in deciding what the facts are consists of:

1.    the sworn testimony of any witness;

2.    the exhibits that are received into evidence;

3.    any facts to which the lawyers have agreed; and

4.    any facts that I have instructed you to accept as proved.

**INSTRUCTION NO. 5**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements and at other times and will say in their closing arguments is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that was excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition, some evidence was received only for a limited purpose; when I have instructed you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

(4) Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

1

## INSTRUCTION NO. 6

2

3        Some evidence may have been admitted for a limited purpose only.

4        When I instructed you that an item of evidence was admitted for a limited

5   purpose, you must consider it only for that limited purpose and not for any other

6   purpose.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**INSTRUCTION NO. 7**

2

3        Evidence may be direct or circumstantial.  Direct evidence is direct proof of a

4   fact, such as testimony by a witness about what that witness personally saw or heard

5   or did.  Circumstantial evidence is proof of one or more facts from which you could

6   find another fact.  You should consider both kinds of evidence.  The law makes no

7   distinction between the weight to be given to either direct or circumstantial

8   evidence.  It is for you to decide how much weight to give to any evidence.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# INSTRUCTION NO. 8

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case, if any;

(5) the witness's bias or prejudice, if any;

(6) whether other evidence contradicted the witness's testimony;

(7) the reasonableness of the witness's testimony in light of all the evidence; and

(8) any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said.  Sometimes different witnesses will give different versions of what happened.  People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.  On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the

number of witnesses who testify.  What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

**INSTRUCTION NO. 9**

The parties have agreed to the following fact: Mr. Paul Mono's date and time of death was February 6, 2018, at 3:00 p.m.  The parties have also agreed that Deputies Anthony Montoya, Michael Johnson, Brent Lind, John Frey, and Brad Carrington were acting within the course and scope of their employment and under color of state law.  You must therefore treat these facts as having been proved.

**INSTRUCTION NO. 10**

You have heard testimony from Scott DeFoe, David Balash, and Robert Fonzi, who testified to opinions and the reasons for their opinions. This opinion testimony is allowed because of the education or experience of these witnesses.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

The testimony of these witnesses does not describe the law in this case. These instructions provide the law.

# INSTRUCTION NO. 11

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone or electronic means, via email, via text messaging, or any Internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial.  Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors.  If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

1    These rules protect each party's right to have this case decided only on

2    evidence that has been presented here in court.  Witnesses here in court take an oath

3    to tell the truth, and the accuracy of their testimony is tested through the trial

4    process.  If you do any research or investigation outside the courtroom, or gain any

5    information through improper communications, then your verdict may be influenced

6    by inaccurate, incomplete or misleading information that has not been tested by the

7    trial process.  Each of the parties is entitled to a fair trial by an impartial jury, and if

8    you decide the case based on information not presented in court, you will have

9    denied the parties a fair trial.  Remember, you have taken an oath to follow the rules,

10   and it is very important that you follow these rules.

11   A juror who violates these restrictions jeopardizes the fairness of these

12   proceedings.  If any juror is exposed to any outside information, please notify the

13   court immediately.

# INSTRUCTION NO. 12

Plaintiff Susan Peck has the burden of proving that the acts of the Defendants deprived Mr. Mono of particular rights under the United States Constitution. In this case, Plaintiff alleges that Defendants Deputy Anthony Montoya and Deputy Michael Johnson deprived Paul Mono of his rights under the Fourth Amendment to the Constitution when one or both of them shot Mr. Mono.

Under the Fourth Amendment, a person has the right to be free from excessive force. In order to prove that either one of the Defendants deprived Mr. Mono of this Fourth Amendment right, Plaintiff must prove the following additional elements by a preponderance of the evidence:

1. That Defendant shot Mr. Mono;

2. In firing his weapon, that Defendant acted intentionally; and

3. The shooting was unreasonable.

A person acts "intentionally" when the person acts with a conscious objective to engage in particular conduct. It is not enough to prove that a Defendant negligently or accidentally engaged in that action. But while Plaintiff must prove that the Defendant intended to act, Plaintiff need not prove that the Defendant intended to violate Mr. Mono's Fourth Amendment rights.

In general, a seizure of a person is unreasonable under the Fourth Amendment if a police officer uses excessive force in making a lawful arrest or in defending himself or others. Therefore, in order to prove an unreasonable seizure in this case, Plaintiff must prove by a preponderance of the evidence that one or both Defendants used excessive force.

Under the Fourth Amendment, a law enforcement officer may use only such force as is "objectively reasonable" under all of the circumstances. You must judge the reasonableness of particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight. Although the facts known to the officer are relevant to your inquiry, an officer's subjective intent or motive is not relevant to your inquiry.

In determining whether Defendant Montoya, Defendant Johnson, or both used excessive force in this case, consider all of the circumstances known to each Defendant at the time of the event, including:

1. the nature of the crime or other circumstances known to the Defendant at the time force was applied;

2. whether Mr. Mono posed an immediate threat to the safety of the Defendant or to others;

3. whether Mr. Mono was actively resisting arrest or attempting to evade arrest by flight;

4. the amount of time the Defendant had to determine the type and amount of force that reasonably appeared necessary, and any changing circumstances during that period;

5. the relationship between the need for the use of force and the amount of force used;

6. the extent of Mr. Mono's injury;

7. any effort made by the Defendant to temper or limit the amount of force;

8. the severity of the security problem at issue;

9. the availability of alternative methods to take Mr. Mono into custody or subdue Mr. Mono;

10. the number of lives at risk (motorists, pedestrians, police officers) and the parties' relative culpability; i.e., which party created the dangerous situation,

and which party is more innocent;

11. whether it was practical for the Defendant to give warning of the imminent use of force, and whether such warning was given;

12. whether the Defendant was responding to a domestic violence disturbance;

13. whether it should have been apparent to the Defendant that the target of the use of force was emotionally disturbed;

14. whether a reasonable officer would have or should have accurately perceived a mistaken fact;

15. whether an objectively reasonable officer would believe that there was a fair probability that Mr. Mono had committed a crime involving the infliction or threatened infliction of serious physical harm; and

16. whether it should have been apparent to the Defendant that the target of the use of force was visually impaired.

Whether Mr. Mono posed an immediate threat is the most important factor. Deadly force is excessive unless the officer has probable cause to believe the suspect poses a significant and immediate threat of death or serious physical injury.

"Probable cause" exists when, under all of the circumstances known to the officer at the time, an objectively reasonable police officer would conclude there is a fair probability that Mr. Mono posed such a threat.

That an officer's negligence may have created or contributed to a dangerous situation does not make an officer's otherwise reasonable use of force in responding to that situation unreasonable.

Even if negligence by an officer helped create or contribute to the dangerous overall situation, use of deadly force is not unreasonable if an officer has probable cause to believe the suspect poses a significant and immediate threat of death or serious physical injury.

**INSTRUCTION NO. 13**

When considering Plaintiff's Fourth Amendment claim, the inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation.  Two or more defendants can act at the same time, either independently or together, to cause a plaintiff's injury.

1

**INSTRUCTION NO. 14**

2

3       A law enforcement agency's internal policies and regulations do not create

4   the legal standard of care. A violation of police policies and procedures does not

5   establish liability for a federal excessive force claim unless the violation of the

6   policy also violated a federal constitutional right. However, you may consider the

7   policies as a factor in determining whether there was a constitutional violation.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# INSTRUCTION NO. 15

Plaintiff claims that Defendant County of Orange violated the Americans with Disabilities Act by discriminating against Mr. Mono by reason of his visual impairment and mental illness by failing to provide a reasonable accommodation. In order to establish this claim, Plaintiff must prove each of the following elements by a preponderance of the evidence:

1.      Mr. Mono was a person with a disability;

2.      The individual Defendants had adequate notice of Mr. Mono's disability;

3.      A reasonable accommodation was available that would have resulted in Mr. Mono suffering no greater injury or indignity than an individual without his disability would have suffered in the same situation; and

4.      The failure to provide a reasonable accommodation caused harm to Mr. Mono.

The duty to reasonably accommodate begins once the Defendants receive adequate notice of Mr. Mono's disabilities.

A disability is a mental or physical impairment that substantially limits any major life activity of an individual. Major life activities are the normal activities of living that a nondisabled person can do with little or no difficulty, such as sleeping, walking, seeing, interacting with others, or working.

The terms disability and physical or mental impairment include (1) any physiological disorder, or condition, or anatomical loss affecting one or more of the following body systems: neurological or sense organs, and (2) any mental or psychological disorder, such as emotional or mental illnesses.

1    Defendant County was not required to provide a proposed accommodation if

2  it can demonstrate that the requested accommodation would have fundamentally

3  altered an essential function of policing, such as investigation or arrest.

4    Plaintiff is only entitled to accommodations that are reasonable. It is for you

5  to decide whether an accommodation was reasonable under the circumstances.

6  Plaintiff proposes the following accommodations: Tactically reposition to safe

7  locations with cover to allow for additional time to comply with orders to exit the

8  residence, and provide that additional time to comply.

9    Set up a perimeter around the home to limit concerns about other community

10  members and safely allow for additional time to comply with orders to exit the

11  residence.

12    De-escalate by tactically repositioning at a safe location within view of the

13  residence to permit continued monitoring without escalation to force.

14    Use verbal skills to de-escalate by avoiding issuing commands, avoiding the

15  use of "command presence voice", and using words like "please."

16    Attempt to reach one of the parties inside the residence by phone.

17  Gather information about the apparent disability(ies) from acquaintances and/or

18  family members.

19    Attempt to solicit an intermediary, such as family members or acquaintances,

20  to communicate the reason for the need to exit the residence.

21    Describe the visual scene to ensure the subject understands what is

22  happening.

23    Give warnings as to what will happen based on the subject's actions.

24    Request support from additional personnel trained in crisis negotiations.

25    Request support from additional personnel trained in responding to threats of

26  suicide.

27    Request additional assets such as less lethal weapons in the event force is

28  needed.

21

1    Request support from Special Weapons And Tactics (SWAT) team.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# INSTRUCTION NO. 16

It is a defense to Plaintiff's discrimination claim if Mr. Mono posed an imminent direct threat to the health and safety of others.  A health or safety risk can be considered only if it is a significant risk of substantial harm. Assessment of the existence of an imminent direct threat must be based on valid and objective evidence and not speculation.

To establish this defense, Defendant County must prove by a preponderance of the evidence that Mr. Mono posed an imminent direct threat to the health or safety of others that could not be eliminated by a reasonable accommodation.

Factors that may be considered in determining whether an individual poses a direct threat to the health and safety of others are:

1.     the nature and severity of the potential harm;

2.     the duration of the potential harm; and

3.     the probability of the harm occurring.

"Imminent threat" is defined later in these instructions.

If you find that Plaintiff proved by a preponderance of the evidence each of the elements in the previous instruction, your verdict as to the discrimination claim should be for Plaintiff, unless you also find that Defendant County has proved this affirmative defense, in which event your verdict as to the discrimination claim should be for Defendant County.

# INSTRUCTION NO. 17

Plaintiff claims that one or both of Defendants Montoya and Johnson were negligent in using deadly force when one or both of them shot Mr. Mono. To establish this claim, Plaintiff must prove all of the following:

1.     Defendants Montoya and Johnson were peace officers;

2.     One or both of Defendants Montoya and Johnson used deadly force on Mr. Mono;

3.     The use of deadly force was not necessary to defend human life;

4.     Mr. Mono was killed; and

5.     The use of deadly force was a substantial factor in causing Mr. Mono's death.

A peace officer may use deadly force only when necessary in defense of human life. In this case, use of deadly force was necessary to defend human life only if a reasonable officer in the same situation would have believed, based on the totality of the circumstances known to or perceived at the time by the Defendant who used deadly force, that deadly force was necessary to defend against an imminent threat of death or serious bodily injury to Defendants or another person other than Mr. Mono.

Deadly force cannot be used against a person based only on the danger that the person may pose to themselves.

A person being arrested or detained has a duty not to use force to resist a peace officer unless the peace officer is using unreasonable force.

"Deadly force" is force that creates a substantial risk of causing death or serious bodily injury.

A threat of death or serious bodily injury is "imminent" if, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or to another person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed.

"Totality of the circumstances" means all facts known to or perceived by the peace officer at the time, including the conduct of Defendants Montoya and Johnson, the conduct of the other deputies, the conduct of Plaintiff and Mr. Mono, and the conduct of other individuals, leading up to the use of deadly force. In determining whether a Defendant's use of deadly force was necessary in defense of human life, you must consider his tactical conduct and decisions before using deadly force and whether the Defendant used other available resources and techniques as alternatives to deadly force, if they would have been considered reasonably safe and feasible to an objectively reasonable officer.

A peace officer who makes or attempts to make an arrest does not have to retreat or stop because the person being arrested is resisting or threatening to resist. Tactical repositioning or other de-escalation tactics are not retreat. A peace officer does not lose the right to self-defense by using objectively reasonable force to arrest, detain, prevent escape, or overcome resistance.

# INSTRUCTION NO. 18

Plaintiff claims that Mr. Mono was harmed by the negligence of Defendants Deputy Brad Carrington, Deputy Brent Lind, Deputy John Frey, Deputy Anthony Montoya, and Deputy Michael Johnson. To establish this claim, Plaintiff must prove all of the following:

1.     One or more of Defendants Carrington, Lind, Frey, Montoya, and Johnson was negligent;

2.     Mr. Mono was harmed; and

3.     The negligence of Defendants Carrington, Lind, Frey, Montoya, or Johnson was a substantial factor in causing Mr. Mono's harm.

Negligence is the failure to use reasonable care to prevent harm to oneself or to others.

A person can be negligent by acting or by failing to act. A person is negligent if that person does something that a reasonably careful person would not do in the same situation or fails to do something that a reasonably careful person would do in the same situation.

You must decide how a reasonably careful police officer would have acted in Defendants Carrington, Lind, Frey, Montoya, and Johnson's situation.

**INSTRUCTION NO. 19**

This instruction applies to Plaintiff's negligence claim only.

A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm.

Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.

# INSTRUCTION NO. 20

This instruction applies to Plaintiff's negligence claim only.

A person's negligence may combine with another factor to cause harm. If you find that any Defendant's negligence was a substantial factor in causing Mr. Mono's death, then that Defendant is responsible for the death. The Defendants cannot avoid responsibility just because some other person, condition, or event was also a substantial factor in causing the death of Mr. Mono.

# INSTRUCTION NO. 21

This instruction applies to Plaintiff's negligence claim only.

You may decide that more than one of the Defendants was negligent, but that the negligence of only one of them could have actually caused Plaintiff's harm. If you cannot decide which Defendant caused Plaintiff's harm, you must decide that each Defendant is responsible for the harm. However, if a Defendant proves that he did not cause Plaintiff's harm, then you must conclude that Defendant is not responsible.

# INSTRUCTION NO. 22

This instruction applies to Plaintiff's negligence claim only.

Defendants Anthony Montoya, Michael Johnson, Brent Lind, John Frey, and Brad Carrington claim that Mr. Mono's own negligence contributed to his death. To succeed on this claim, Anthony Montoya, Michael Johnson, Brent Lind, John Frey, and Brad Carrington must prove both of the following:

1. That Mr. Mono was negligent; and

2. That Mr. Mono's negligence was a substantial factor in causing his death.

If Anthony Montoya, Michael Johnson, Brent Lind, John Frey, and Brad Carrington prove the above, Plaintiff's damages are reduced by your determination of the percentage of Mr. Mono's responsibility. I will calculate the actual reduction.

**INSTRUCTION NO. 23**

This instruction applies to Plaintiff's negligence claim only.

If you find that the negligence of more than one person including Defendants and Mr. Mono was a substantial factor in causing Plaintiff's harm, you must then decide how much responsibility each has by assigning percentages of responsibility to each person listed on the verdict form. The percentages must total 100 percent.

You will make a separate finding of Plaintiff's total damages, if any. In determining an amount of damages, you should not consider any person's assigned percentage of responsibility.

# INSTRUCTION NO. 24

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

Plaintiff Susan Peck can recover damages for certain claims directly, but for other claims, damages would be recovered by the Estate of Paul Mono. Plaintiff Susan Peck is the representative of the Estate of Paul Mono.

If you find for Plaintiff on any of the claims, you must determine damages. Plaintiff has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate for any injury you find was caused by one or more Defendants.

The amount of damages must include an award for each item of harm that was caused by each Defendant's wrongful conduct, even if the particular harm could not have been anticipated.

If you find that one or more Defendants used excessive force against Mr. Mono or discriminated against Mr. Mono on the basis of a disability, you should consider the following when determining the Estate of Paul Mono's damages: It is for you to determine what damages, if any, have been proved. Your award must be based upon evidence and not upon speculation, guesswork, or conjecture.

1. The nature and extent of Mr. Mono's injuries;

2. The disfigurement and loss of enjoyment of life he experienced;

3. The mental, physical, and emotional pain and suffering experienced prior to death;

4. The reasonable value of earnings lost up to the present time; and

5. The reasonable value of earnings that with reasonable probability will be lost in the future.

1    If you decide that Ms. Peck has proved her wrongful death claim against any

2   of the Defendants for the death of Mr. Mono, you also must decide how much

3   money will reasonably compensate Ms. Peck for the death of Mr. Mono. Ms. Peck

4   does not have to prove the exact amount of these damages. However, you must not

5   speculate or guess in awarding damages.

6    The damages claimed by Ms. Peck fall into two categories called economic

7   damages and noneconomic damages. You will be asked to state the two categories

8   of damages separately on the verdict form.

9    Ms. Peck claims the following economic damages:

10    1. The financial support, if any, that Mr. Mono would have contributed to the

11    family during either the life expectancy that Mr. Mono had before his death or

12    the life expectancy of Ms. Peck at that time, whichever is shorter;

13    2. The reasonable value of household services that Mr. Mono would have

14    provided.

15    Ms. Peck also claims the following noneconomic damages:

16    1. The loss of Mr. Mono's love, companionship, comfort, care, assistance,

17    protection, affection, society, and moral support.

18    Ms. Peck may recover for harm she proves she has suffered to date and for

19   harm she is reasonably certain to suffer in the future.

20    No fixed standard exists for deciding the amount of noneconomic damages.

21   You must use your judgment to decide a reasonable amount based on the evidence

22   and your common sense.

23    For these noneconomic damages, determine the amount in current dollars paid

24   at the time of judgment that will compensate Ms. Peck for those damages.

25    In determining Ms. Peck's loss, do not consider:

26    1. Ms. Peck's grief, sorrow, or mental anguish;

27    2. Mr. Mono's pain and suffering; or

28    3. The poverty or wealth of Ms. Peck.

33

In deciding a person's life expectancy, you may consider, among other factors, the average life expectancy of a person of that age, as well as the person's health, habits, activities, lifestyle, and occupation.

According to the National Center for Health Statistics Vital Statistics of the United States, the average life expectancy of a 65-year-old male in 2018 was 18.1 years and the average life expectancy of a 64-year-old female in 2018 was 21.4 years. This published information is evidence of how long a person is likely to live but is not conclusive. Some people live longer, and others die sooner.

1

**INSTRUCTION NO. 25**

2

3        The law that applies to this case authorizes an award of nominal damages as

4   to the excessive force and discrimination claims. If you find for Plaintiff or the

5   Estate of Paul Mono, but you find that one or both of them have failed to prove

6   damages as defined in these instructions, you must award nominal damages.

7   Nominal damages may not exceed one dollar.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 26**

This instruction applies to the Estate of Paul Mono's federal excessive force claim only.

If you find for Plaintiff, you may, but are not required to, award punitive damages against Defendant Montoya or Defendant Johnson. The purposes of punitive damages are to punish a defendant and to deter similar acts in the future. Punitive damages may not be awarded to compensate a plaintiff.

Plaintiff has the burden of proving by a preponderance of the evidence that punitive damages should be awarded and, if so, the amount of any such damages. You may award punitive damages only if you find that the Defendant's conduct that harmed Mr. Mono was malicious, oppressive, or in reckless disregard of his rights. Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring the plaintiff. Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety or rights, or if the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law. An act or omission is oppressive if the defendant injures or damages or otherwise violates the rights of the plaintiff with unnecessary harshness or severity, such as by misusing or abusing authority or power or by taking advantage of some weakness or disability or misfortune of the plaintiff.

Punitive damages may be awarded even if you award the Plaintiff only nominal, and not compensatory, damages.  The amount of punitive damages, if any, will be decided later.

**INSTRUCTION NO. 27**

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your foreperson should complete the verdict form according to your deliberations, sign and date it, and advise the bailiff that you are ready to return to the courtroom.

# INSTRUCTION NO. 28

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**INSTRUCTION NO. 29**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the bailiff, signed any one or more of you.  No member of the jury should ever attempt to communicate with me except by a signed writing.  I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court.  If you send out a question, I will consult with the lawyers before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.